MORAN UTILITIES COMPANY, Appellant,

v.

Kenneth R. McHANEY, Jr., et al., Appellees.

No. 6163.

Court of Civil Appeals of Texas.

Beaumont.

May 21, 1959.

Rehearing Denied June 17, 1959.

**714**

Vinson, Elkins, Weems & Searls, Houston, for appellant.

McClain & Harrell, Conroe, for appellee.

McNEILL, Justice.

This is a gas explosion case. On or about June 17, 1955 plaintiff, appellee here, Kenneth R. McHaney, Jr., who was then the husband of Barbara Jean McHaney, entered their residence which was a first-floor apartment in the "Morris Apartments" facing north on W. Phillips Street and immediately east of an alley-way running north and south between Phillips and Davis Streets in the City of Conroe, Montgomery County, and having passed through the living room, reached the kitchen doorway intending to light a cook stove to warm his meal and struck a match which caused a strong accumulation of gas to explode with terrific force, causing severe injuries to plaintiff and the building to be set on fire and damaged. After the explosion, and before suit was instituted, a divorce was obtained between the McHaneys, but this action was brought by both against the defendant, Moran Utilities Company, now appellant, for damages resulting from the explosion. Upon trial before court and jury, verdict favorably to appellees was returned and judgment rendered thereon, and in accordance with certain stipulations, for $39,565.

Appellant attacks the judgment against it through eighteen points, the first fifteen of which, in effect, urge that while the entire trial of some 8 days was consumed in a contest over the issue as to the existence of a leak in defendant's gas line "lying immediately to the rear" of the Morris Apartments that it was only at the time the charge was being prepared that the issues submitted failed to restrict the issues of negligence and proximate cause

to the lines lying "immediately to the rear" of the Morris Apartments thus changing appellees' theory of their case, that in effect appellees conceded failure to prove evidence as related to the part of the lines "lying immediately to the rear" of the apartments and the court having submitted the issues *outside of and without support in the petition* over objection pointing this out, committed error. To state appellant's contention here in its own language, we quote:

"It is the appellant's position under these Points of Error that the plaintiff plead and attempted to prove a cause of action based upon one theory but recovered judgment for a cause of action based on another and entirely separate theory. That is, he accused this appellant of negligently causing the accident in one way, attempted to prove that the accident was caused in this way, but obtained findings from a jury in support of its judgment that the accident happened in an entirely separate and different way."

Appellees in reply to appellant's first 15 points state, in effect, that the trial court did not err in submitting the issues complained of because said issues were on the same theory advanced by the pleadings and the evidence. Appellees also say that since appellant made no objection in the trial court to the submission of Special Issues Nos. 1, 2, and 3, on the grounds of insufficient pleadings, evidence or theory of the case, under Rule 274, Texas Rules of Civil Procedure, it has waived the right to complain thereof as against these three issues on appeal.

In their petition appellees alleged that the gas causing the explosion had escaped from appellant's gas lines and that it contained no malodorant to warn a person of its presence; it described the location of the premises and the accident resulting. Since appellant in support of its contention that the petition limits the lines involved to the area immediately to the

rear of the Morris Apartments and quotes the last part of Paragraph III of the petition to substantiate it, we quote the entire paragraph:

"Plaintiffs further show unto the Court and jury that on the date above alleged and for a number of years prior thereto, the defendant, Moran Utilities Company, a corporation, was and has been supplying, furnishing and/or distributing gas for domestic purposes to the various occupants of the apartment building located at 107 West Phillips Street in the City of Conroe, Montgomery County, Texas. That defendant furnishes and/or supplies said gas which is used in said building through gas pipe lines belonging to and maintained by defendant, which connect to the gas meter located outside of said building in which the explosion occurred. The gas pipe lines of defendant are located in the alleyway and run up to said gas meter. Your plaintiff would further show unto the Court and jury that the gas which had accumulated in the apartment and building was gas that had escaped from the gas pipe line or lines of defendant and had found its way into said apartment building where it had accumulated to form an explosive force, your plaintiffs would further show that said gas caused the explosion in question did not escape from the gas pipe lines or jets located in the apartment itself and that such gas escaped from the lines of defendant, Moran Utilities Company."

We do not believe that these allegations limit the inquiry to the line in the alley as contended by appellant as they were so described to acquaint the Court and jury with the physical facts surrounding the apartment.

To sustain our view first expressed, we summarize the succeeding paragraphs of the petition. Paragraph IV alleged that the Railroad Commission of Texas had entered an order March 16, 1943, requiring every gas company to odorize gas continually by the use of a malodorant agent, which was to be of such character as to indicate by distinctive odor the presence of gas, and otherwise described the requirements of such order, copy of which was attached to the petition. Par. V of the petition states that said order of the Railroad Commission was in full force and effect on June 17, 1955, but that defendant wholly failed to refused to introduce into the natural gas contained in its gas lines on the grounds of the apartment building involved such malodorant agent; that if any such malodorant was in such gas lines it was not of character as to indicate the presence of gas as required by said order, and failure of defendant to so comply with the order was negligence per se and a proximate cause of plaintiffs' damage. Par. VI alleged that the natural gas distributed by defendant through its gas lines at said building and which leaked into said building did not contain a natural odor complying with the Railroad Commission's ruling and that said gas did not have any odor capable of warning plaintiff that gas was present in the building. Par. VII following alleged that the explosion involved resulted from the negligence of the defendant utility company in one or more or all of the following particulars: (1) in failing to comply with said order of the Railroad Commission requiring that gas found in its pipe lines at said building must contain a malodorant agent which was negligence per se; (2) in failing to comply with said order requiring defendant to introduce a malodorant agent into the natural gas found in its pipe lines at said building of such character as to indicate the presence of gas which was negligence per se; (3) in failing to comply with said order by introducing such malodorant into the gas found in its pipe lines on grounds of such building so that such gas would give an odor readily susceptible to the average olfactory senses of a person going from fresh air into a

closed place when gas is present which was alleged to be negligence per se. (4) In allowing natural gas to leak from its pipe lines into said building when such gas did not contain a malodorant required by law to warn plaintiff of the presence of such gas in said building. (5) In allowing natural gas to pass through its pipe lines to said building on June 17, 1955 and prior thereto when such gas did not contain sufficient malodorant to warn a person coming in contact therewith of the presence of gas in the building; (6) in furnishing gas to said apartment building when it did not contain a sufficient quantity of malodorant to warn plaintiff of the presence of gas in said building; (7) in maintaining an excessive pressure upon its lines whereby gas was forced to leak from the lines of defendant and from the continuations thereof. (8) In maintaining its lines and equipment in a defective and dangerous condition. (9) In failing to replace its gas pipe line in the alley-way and the feeder lines from the main line to the meter in question since said lines were originally laid by defendant in 1933, when defendant knew, or should have known, that said line was unsafe for the transmission of gas. (10) In failing to uncover said gas lines located in the alley-way and from the alley-way to the meter of said apartment building for inspection within 15 years prior to the explosion in question; (11) in failing to uncover the gas pipe line in the alley-way by the west side of the apartment building for the safe transmission of gas when the defendant had found and repaired the gas leak in said line at a point about 30 feet north of said building within a year or two prior to the explosion. (12) In permitting gas to escape from its lines and accumulate within the residence of plaintiffs and elsewhere in the aforesaid apartment building. (13) In failing to place proper safety devices upon its lines at or near the residence of plaintiffs. (14) In failing to properly inspect its lines and meters at or near the residence of plaintiffs. (15) In failing to inspect and repair the gas pipe lines in the alley-way immediately west of the apartment building after defendant was warned about 10 days prior to the explosion in question that there was a gas leak in the vicinity of the center of the apartment building on the west side of said building; (16) in failing to test said gas so delivered to the residents of said apartments and to the residents of the City of Conroe, Texas prior to the explosion in question to determine whether said gas contained sufficient malodorant as required by law or that could be smelled and detected by an ordinary person upon entering a room where said gas had escaped. No special exception was filed nor argued against any of the allegations made in the petition.

The issues complained of, Nos. 1 through 10, under the above pleadings, all of which were answered "yes", read as follows:

### "Special Issue No. 1

"Do you find from a preponderance of the evidence that defendant, Moran Utilities Company, failed to have the gas involved in the explosion and fire in question so odorized by adding a malodorant agent that would vaporize, dissolve in or be so diffused with gas as to produce an odor readily perceptible to normal or average olfactory senses of a person coming from fresh, ungasified air into a closed room or space when gas is present in air in concentrations of as much as one part gas to ninety-nine parts air in said closed room or space?

"If you have answered the foregoing Special Issue No. 1 'yes', and only in that event, then answer:

### "Special Issue No. 2

"Do you find from a preponderance of the evidence that such failure, if any, to so odorize said gas was negligence, as that term is defined herein?

"If you have answered the foregoing Special Issue No. 2 'yes', and only in that event, then answer:

"Special Issue No. 3

"Do you find from a preponderance of the evidence, that such negligence, if any, was a proximate cause of the explosion and fire in question?

"Special Issue No. 4

"Do you find from a preponderance of the evidence that gas had escaped from the gas lines of defendant, Moran Utilities Company, prior to the explosion and fire in question?

"If you have answered the foregoing Special Issue No. 4 'yes', and only in that event, then answer

"Special Issue No. 5

"Do you find from a preponderance of the evidence that the escaping gas, if any, inquired about in the preceding Special Issue, entered into the Morris Apartments Building prior to the explosion and fire in question?

"If you have answered the foregoing Special Issue No. 5 'Yes', and only in that event, then answer

"Special Issue No. 6

"Do you find from a preponderance of the evidence that the escaping gas, if any, inquired about in the preceding Special Issue, was a proximate cause of the explosion and fire in question?

"If you have answered the foregoing Special Issue No. 4 'Yes', and only in that event, then answer

"Special Issue No. 7

"Do you find from a preponderance of the evidence that defendant, Moran Utilities Company, failed to make such tests and inspections of its gas lines prior to the explosion and fire in ques-

tion as would have been made by a person or corporation of ordinary prudence in the exercise of ordinary care under the same or similar circumstances?

"If you have answered the foregoing Special Issue No. 7 'Yes', and only in that event, then answer

"Special Issue No. 8

"Do you find from a preponderance of the evidence that such failure, if any, was a proximate cause of the explosion and fire in question?

"If you have answered the foregoing Special Issue No. 4 'Yes', and only in that event, then answer

"Special Issue No. 9

"Do you find from a preponderance of the evidence that defendant, Moran Utilities Company, by the use of ordinary care could have discovered the gas escaping from defendant's gas lines, if any, prior to the explosion and fire in question.

"If you have answered the foregoing Special Issue No. 9 'Yes', and only in that event, then answer

"Special Issue No. 10

"Do you find from a preponderance of the evidence that the failure of defendant, Moran Utilities Company, to discover the gas escaping from defendant's gas lines, if any, prior to the explosion and fire in question was a proximate cause of the explosion and fire in question?"

 Appellant's main burden under its 15 points is that the pleadings of the plaintiff are not sufficiently broad to sustain Special Issues 1 through 10. We do not so construe plaintiffs' petition. It is conceded that appellant under a franchise as a public utility was furnishing gas to the City of Conroe. The proof showed that

appellant purchased gas from two sources—from the Tex-Mo Brown No. 1 well from a source about three miles from the city limits, and from Midland Gasoline Plant nine miles outside the city limits, and that appellant had automatic malodorant plant equipment to insert malodorant into its gas line connecting with the Midland Gasoline Plant and hand operated malodorant equipment to insert malodorant into their gas line connecting with Tex-Mo Brown well; that these were the only two ways this malodorant could be inserted into appellant's lines and that appellant's lines were a connected system as a public utility serving the City of Conroe. While we think it necessary under Rule 274, T.R.C.P., that objection should have been made to Issues 1, 2 and 3 that they were not supported by the pleading before they were given in the charge to the jury, which appellant failed to do, even if proper objection had been made it would have been without merit. Subs. 4, 5, 6, and 11 of Par. VII of the petition do not limit the gas pipe lines to that lying immediately to the rear of or in the vicinity of the Morris Apartments, and fair notice under Rules 45 and 47, T.R.C.P., was therefore given the defendant under the circumstances to warrant the submission of Issues 1, 2, and 3. Dorman v. Cook, Tex.Civ.App., 262 S.W. 2d 744. Issues 4, 5, 6, 9 and 10 have support in Subdvn. 12 of Par. VII of the petition. We think however that Issues 7 and 8 are not supported by any allegation of the petition. They are general in nature and the subdivisions alleging failure of inspection, Nos. 10, 13, 14 and 15, limit the lines to those in the alley-way or vicinity of the premises. However, no objection at all was made that any evidence offered did not come within the pleadings until objections were made to the charge.

■ In view of appellant's strong insistence that the battle for the entire trial was joined in, on and around and limited to appellant's line in the immediate alley-way by the apartments, appellees have no right to change their theory of the case and rely upon the charge as given which did not limit the issue of gas escaping or lack of malodorant to the line immediately to the rear of the Morris Apartments; that while appellant successfully defended against the charge involving the immediate area, it did not come prepared to defend the system generally. To properly appraise this contention we have read the entire statement of facts of 1223 pages and cannot approve appellant's position. While necessarily the contest centered in and near the apartments, the evidence flowed out from there and at times involved appellant's entire gas system. A few instances of testimony affecting the system generally follow: Carl Capps, appellant's manager, testified as to the two sources of gas supply for the system and as to the sets of equipment to insert malodorant into its lines; each of said malodorant plants were located outside of the City of Conroe. He also stated that the company made a check of all the main gas lines of the Moran system at regular intervals, that one was made in 1952 of the entire system; and that a majority of the lines are walked once a month. He gave considerable testimony as to testing, repairs, replacement and re-working of the main gas line in the alley-way involved and across intersecting Phillips and Davis Streets and north and south of those streets. Mortimer Jones, appellees' expert witness, testified that a hand operated malodorant plant or equipment is a "hit-and-miss" odorization. He stated he examined the main gas line as it ran north of Phillips Street and told how to detect leaks in gas lines. He said leaks could be even 600 feet in such lines from where they surface and that gas could travel indefinitely outside but around gas or other lines before surfacing, depending on the kind of soil and how hard the surface of the ground was. He further stated that a gas company should inspect its lines for condition of its pipe every 5 years. In answer to a hypothetical question involving the gas line in the alley as reflected on the plat in evidence and from

his investigation north of Phillips Street, he stated that the gas causing the explosion had escaped from appellant's line and followed a lateral sewer line until it surfaced under the McHaney apartment and entered the building. To another question, he stated that gas would travel several hundred feet under ground from the point where it has escaped. While he could not locate the leak he said there was bound to have been one somewhere in the area, but not 4 or 5 miles away; it could have been 200 or 300 feet north or it could have occurred within a block's radius of the Morris Apartments. E. L. Mack, city superintendent and plumbing inspector, testified that the utility company makes periodical tests of their lines to determine as to leaks and had seen its agents do this in just about every end of town.

 Appellant's 16th and 17th points urge that the juror Howard Straily, who served as foreman of the jury in the case, was a biased and prejudiced juror and that thereby its constitutional right to a trial before a jury composed of 12 impartial countrymen was violated. No written record was made of the voir dire examination of the jury panel. Testimony involving this on the hearing of the motion for new trial, in material part, follows:

"Q. (by Mr. Weatherly) Now, Mr. Straily, when you were selected as a juror in this case, there were certain questions asked you while you were sitting out there with the other group before you were selected, weren't there? You were asked certain general questions, you as well as the members of the entire panel? A. I think we were asked if we had any hard feelings against the defendant.

"Q. Well, you were asked if you had any hard feelings against the defendant, and weren't you asked likewise if there was any reason, any negotiations you had with them that would keep you from giving them a fair trial? A. I think that was it.

"Q. What was your response to that questinon? A. I had no ill feelings or nothing else against the company.

"Q. Were you asked generally if you had been involved in any disputes with them, political or personal? A. No, sir, I was not.

"Q. Well, had you been involved in any disputes with them or— A. At that time I didn't know I had, but I have signed a petition to get the gas pressure raised in our vicinity down there, and I—it was brought to my attention after the trial.

"Q. What do you mean, you didn't know that you had signed a petition— A. I had forgotten about it?

"Q. You had forgotten about it? A. Yes, sir.

"Q. When did that occur, Mr. Straily? A. Oh, it's been five, six, seven, or eight months ago, I—before the trial.

"Q. I beg your pardon? A. It was five or six months before the trial. I don't know what date it was.

"Q. But you understood the nature of the question asked you on voir dire, did you not, to the effect as to whether or not you had— A. It did not affect me in any way. That was not—I wasn't mad at the gas company. All I wanted to do was to see if we couldn't get a little more pressure down there and, to my understanding, that was the best way about getting my gas pressure raised is a group of people going together and getting this petition; one or two wouldn't do any good.

"Q. Mr. Straily, that wasn't the question that was asked you, sir. I was asking you, if on voir dire you weren't asked if you had been involved in any matter that would keep you from giving the gas company a fair trial, that

was one thing, wasn't it? A. That's right. I was not.

"Q. You were asked the question if you had been involved in any disputes with them, and you say you don't recollect it, is that it, or that you didn't recollect it at that time? A. I didn't recollect it at that time. I didn't know that had anything to do with it.

"Q. Well— A. I had forgotten about it."

On further examination he stated:

"Q. Of course, you recollect, generally speaking, the character of questions that were asked by me and, to some extent, by Mr. Darden on voir dire about whether you were able to give both sides a fair trail, don't you? A. That's right. That's what you asked the whole bunch.

"Q. And you recollect that you understood that question to mean if anybody had been involved in any dispute with the gas company, they ought to speak up, didn't you? A. That's right.

"Q. And you didn't consider that you had been involved in any dispute? A. That's right. I didn't—Like I said, I had forgot all about this until it was brought to my attention about three weeks after the trial."

Cam Harrell, attorney for appellees, testified: "I was present during the voir dire questioning of the jury and was listening to the questions to the jury propounded by the attorneys for the defendant in this cause, and at no time during the voir dire was the juror Straily or any other juror asked if they had any dispute with the gas company. The only question other than the general question propounded to the jurors by the attorneys for both sides asking them if they thought they could give both parties a fair trial, that the attorneys for the defendant asked the jurors, it was a general question addressed to all the jurors, was in substantially the following words:

'None of you are mad at the gas company about high rates or anything like that, are you?' And that was the only question asked of the jury on voir dire by the attorneys for the defendant other than the general question of could they give both parties a fair trial concerning any interest of the juror in the case." The trial court heard the testimony and resolved the issue against appellant. In this he did not err. No probable injury is shown in the record by reason of the fact that Straily served as a juror. The evidence supports the verdict and the amount of recovery allowed appellees is not attacked. Several cases are cited by appellant and by appellees on the question but no good could be served by discussing them and this opinion would be unduly lengthened. The controlling case here is Childers v. Texas Employers' Ins. Ass'n, 154 Tex. 88, 273 S.W.2d 587, 588. Justice Smith in writing the opinion for the court said:

"The failure of a juror on his voir dire examination to disclose information that he had suffered previous injuries is not the test to be applied in this case, unless the evidence shows that he concealed the fact of previous injury, as alleged in the motion for new trial, and that such action resulted in probable injury to the respondent."

And concluding the opinion:

"A failure to disclose a fact which has been forgotten did not result in an improper tribunal being established."

The 18th point is:

"The trial court erred in sustaining plaintiff's Special Exceptions to defendant's First Amended Motion for New Trial and in refusing to hear evidence and testimony from the jurors relative to their misconduct during their deliberations in the particulars alleged in defendant's First Amended Motion for new trial."

Appellant's motion set forth six grounds of alleged material misconduct of the jury

that tried the case. These grounds were alleged generally and were (1) That "there was a general discussion before all of the jurors" that since the risk was covered by insurance it would not be necessary for appellant to pay off the judgment, (2) "There was a discussion as to the attorney's fees that might be awarded—(and) they should award and assess damages with that idea in mind," (3) there was "a general discussion" that since the jurors could not understand the issues on liability that they need only follow the argument of plaintiff's attorney and there then followed this character of answers to the issues, (4) the jury gave no adequate consideration to the issue of damages, it being considered that regardless of liability the jury should award some money to plaintiff who could then get an education and try to "straighten himself out", (5) "—in that certain of the jurors advised the balance of the jurors that if they intended to further consider the question of liability—they had better prepare themselves to stay there at least six months —"; that this statement amounted to coercing the other jurors to follow the will of the jurors making the statement, (6) "That there was material misconduct of one or more of the jurors during the trial of the case in that there was a communication between representatives of persons dealing with plaintiff's side of the case and the members of such jury, which was contrary to law." These allegations were sworn to by appellant's attorney but no affidavit of any juror was attached to t' c motion substantiating any such allegation, it being asserted that reasonable grounds existed for failure to do so. The ground was that the jurors refused to give an affidavit and appellant charged the basis for this refusal was a letter which appellees' attorney wrote and mailed to each juror after the trial advising them that they did not have to discuss their deliberations with anyone and he urged them not to do so. In this connection it was also brought out on the hearing of the motion while the jury was still in the jury box but had been discharged officially from the case, appellees' attorney advised them that they had a legal right to refuse to talk to any one, "that the law did not prevent them from talking to anyone that they desired, but that they did not have to."

Appellees leveled special exceptions to the above allegations of misconduct set forth in the motion for new trial and the affidavit of appellant's attorney thereto, asserting that the allegations were insufficient since no affidavit of any juror was attached thereto and no reasonable excuse given for failure to do so, that the allegations were mere conclusions and set out no facts as to what was purportedly said by any juror in front of any other juror, the identity or other means of identification of any such juror was not given, nor as to any juror who informed appellant's attorney, nor as to the alleged information given, nor as to what any juror would testify upon the hearing, and further that the allegations of the motion show that due diligence to secure affidavits was not shown since it was not alleged that each of the 12 jurors was contacted by appellant and had been asked to give an affidavit in connection with said matters, and having failed to contact each juror it has no valid excuse for not producing affidavits. The exceptions further alleged that not having given any specific acts of alleged misconduct the proceeding is a mere "fishing expedition". Following these exceptions there was a denial under oath that there was any misconduct of the jury. The trial court heard these exceptions and the arguments thereon and sustained them. Appellant had 11 of the jurors subpoenaed and 9 of them were in attendance at the hearing. A lengthy bill of exceptions (pgs. 166–192 Tr.) was taken from this proceeding but we fail to find therein any request by appellant to make a bill or bills of exceptions of any proffered testimony on jury misconduct of any former juror in attendance at the time as bearing on the items of misconduct to which exceptions were sustained.

In order to test the action of the court below let us examine it in the light of the rules established for motions alleging jury misconduct in Roy Jones Lumber Co. v. Murphy, 139 Tex. 478, 163 S.W.2d 644, 646. The court there said, quoting authorities:

"The only remedy against 'fishing expeditions' where misconduct is charged, is to require that, by affidavits, the movant shall prove his good faith and, by particularizing, demonstrate that his allegations of misconduct are based upon knowledge and not suspicion or hope.' Freedman Packing Co. v. Harris, Tex.Civ.App., 160 S.W.2d 130, 134, error dismissed, want of merit.

"Therefore, we hold that the correct rule is (1) if affidavits are attached to the motion showing material jury misconduct it is reversible error for the trial court to refuse to hear testimony on the motion, Stockwell v. Snyder, 126 Tex. 6, 84 S.W.2d 705; (2) or, if the motion discloses a reasonable explanation and excuse as to why affidavits cannot be secured and exhibited, in connection with sufficient allegations of material jury misconduct, it is likewise reversible error to decline to hear testimony on the motion, Robertson v. Humble Oil & Refining Co., supra [Tex.Civ.App., 116 S.W.2d 820]; but (3) in the absence of such affidavits or a reasonable excuse for not exhibiting the same, a refusal to hear testimony from the jurors on the motion is a matter within the sound discretion of the trial judge, * * *."

We gather from this that the first and important requisite to such motion is that any jury misconduct must be particularized. It should be done either in the motion itself or general allegations therein with annexed affidavit of one or more jurors particularizing the circumstances so that the complaining party's demonstration is based on knowledge "and not suspicion or hope". See for such affidavit, Jones v. Elliott, Tex.

Civ.App., 259 S.W.2d 288. Appellant contends that it had a reasonable excuse for not attaching an affidavit of one or more jurors because appellees' attorney had urged them not to discuss the matter with anyone. It was not shown how many jurors were contacted in connection with this question nor was any such juror talked to identified but it was shown that the ones contacted did talk about the question to appellant's attorney, although they refused to give an affidavit. It is impossible from the allegations made to determine just what effort or diligence was made to secure an affidavit and whether, therefore, a reasonable explanation or excuse existed for failure to attach a juror's affidavit. Moreover, appellant failed to request the court, after it had sustained the exceptions, for permission to place one or more of the jurors in attendance on the stand for the purpose of making a bill of exception as to what such juror or jurors would testify to about misconduct. Where no affidavit or other written statement of a juror is furnished the court in a comparable situation, it is incumbent upon the party complaining to make a bill of his proffered testimony or a sufficient part thereof to show the court his action is based "upon knowledge and not suspicion or hope." [139 Tex. 478, 163 S.W.2d 646.] Nunn v. Daly, Tex.Civ.App., 150 S.W.2d 834; Hobbs v. Slayton, Tex. Civ.App., 265 S.W.2d 838. Appellant refers us to several cases on the point of jury misconduct here involved, but its principal reliance is upon the Roy Jones Lumber Co. case, supra, and Freedman Packing Co. v. Harris, Tex.Civ.App., 160 S.W.2d 130. In both these cases after exceptions were sustained to allegations of jury misconduct, detailed statements were tendered the court which showed with specific detail the jury misconduct complained of. In the case before us, the trial court was left with only the generalities of stricken pleadings to go on.

The cause was properly disposed of by the trial court and its judgment is affirmed.