Cynthia Ann JORDAN and James Jordan, Appellants,

v.

ORTHO PHARMACEUTICALS, INC., et al.,

No. 04-83-00148-CV.

Court of Appeals of Texas, San Antonio.

July 31, 1985.

Rehearing Denied Sept. 23, 1985.

Eileen Flume, Flume & Flume, San Antonio, for appellants.

Bryan J. Maedgen, Royal Brin, Strasburger & Price, Dallas, Wade Sheldon, Thomas Crofts, Jr., Groce, Locke & Hebdon, San Antonio, for appellees.

Before ESQUIVEL, CANTU and DIAL, JJ.

CANTU, Justice.

This is a drug products liability case in which appellants, plaintiffs below, allege that the use of Ortho Novum 1/80 21 and Ortho Novum 1/50 21, oral contraceptives manufactured, marketed and distributed by appellees, caused appellant, Cynthia Ann Jordan benign hepatic cellular adenomas (liver tumors) which ruptured without warning thereby causing multiple interrelated injuries.

Appellants' first amended petition charged appellees Ortho Pharmaceuticals, Inc., Ortho Pharmaceutical Corp. and Rolando A. Garza, d/b/a Harmony Hills Pharmacy with liability under various theories including negligence, negligence *per se*, strict liability and violation of the Deceptive Trade Practices-Consumer Protection

Act, TEX.BUS. & COM.CODE ANN. § 17.-41 *et seq.* A non suit was taken as to Garza.

Trial was to a jury which returned a verdict in favor of all the defendants. A take nothing judgment was entered in accordance with the verdict. Appellants' motion for new trial was overruled and this appeal followed.

Eight contentions are brought forth for review. By their first point of error appellants complain of the trial court's action in permitting the trial to proceed without an official court reporter.

The statement of facts before us consists of some nine bound volumes and two excerpts of transcribed testimony developed during trial on the merits and subsequent proceedings.

Seven of the volumes and one of the excerpts of transcribed testimony appear to have been taken by and are certified by an auxiliary court reporter as being a true and correct transcription of the proceedings attended. *See* TEX.R.CIV.P. 377(f).[1] These seven volumes and one excerpt comprise the trial on the merits and *voir dire* of the prospective jurors.

Two other volumes contain testimony developed at post verdict proceedings. These volumes are certified as being true and correct transcriptions of proceedings attended by a different court reporter. One excerpt containing the opening statement to the jury by counsel for Ortho appears to have been transcribed by a court reporter associated with a court reporting firm known as Moore and Howard, Inc. of San Antonio. The excerpt is not certified as required by Rule 377(f).

Appellants contend they are entitled to a new trial as a matter of law because the proceedings were not totally transcribed by the official court reporter.

At a hearing of a contest of the affidavit of inability to pay costs on appeal filed by appellants and of a motion to increase bond it was developed that appellees had arranged with the official court reporter for the providing of daily copy. The official court reporter testified that she had secured the services of a private court reporting firm to assist her with the preparation of daily copy. Two private court reporters were sent to assist the official court reporter in the preparation of the daily copy.

The record does not reveal which portions of the testimony were transcribed by which court reporter other than as earlier noted, by referring to the certificate attached to each volume.

Since all of the transcribed testimony before us is certified to by the official court reporter or the auxiliary court reporter, except for an excerpt containing twelve pages of opening statement by counsel for Ortho, we must assume, absent a showing to the contrary, that all of the statement of facts was prepared by duly qualified court reporters except for the portion containing the twelve pages aforementioned.

As we understand the complaint, appellants do not contend that they were deprived of a meaningful statement of facts. Rather their complaint is that since the statement of facts (prepared from the daily copy) was not entirely prepared by the official court reporter or a deputy court reporter qualified by the trial court, a new trial is mandated.

TEX.REV.CIV.STAT.ANN. art. 2323 (Vernon 1971) provides in pertinent part:

In case of illness, press of official work, or unavoidable disability of the official shorthand reporter to perform his duties in reporting proceedings in court, the judge of the court may, in his discretion, authorize a deputy shorthand reporter to act during the absence of said official shorthand reporter, and said deputy shorthand reporter shall receive, during the time he acts for said official shorthand reporter, the same salary and fees as the official shorthand reporter of said court, ... The necessity for a deputy official shorthand reporter shall be left entirely within the discretion of the judge of the court.

---

1. All references to rules are to the Texas Rules of Civil Procedure.

The following testimony was developed at the hearing contesting the affidavit of inability to pay costs on appeal.

Q: Now, the typing and preparation of a daily copy necessitated you not being in the courtroom during the entire trial?

A: That's correct.

Q: Okay. And whom did you employ to assume your official court reporting duties while you were absent from the trial?

A: The firm of Moore & Howard.

Q: And what were your arrangements with them?

A: That they would furnish two court reporters, two typists, and equipment to aid in the preparation of the daily copy.

Q: And were they—how many court reporters? They furnished two court reporters?

A: Yes, Ma'am.

Q: And were the two court reporters sworn in as official court reporters, temporary official court reporters of the 37th District Court?

A: I really don't know. I don't recall if they were or not.

Although appellants contend that parts of the statement of facts were prepared by unauthorized court reporters, the record does not substantiate their claim. The only witness whose testimony bears on qualification of the court reporters was unable to state that the court reporters were not sworn in by the trial court.

■ The burden was upon appellants to establish the existence of noncompliance with Article 2323. In the absence of some showing that there was noncompliance with the statute the presumption obtains that the proceedings in the trial court were regular and in compliance with the law. 1 C. McCORMICK & R. RAY, TEXAS LAW OF EVIDENCE § 98 (Texas Practice 2d ed. 1956); *Dorfman v. Dorfman*, 457 S.W.2d 417 (Tex.Civ.App.—Texarkana 1970, no writ).

We, therefore, presume that the trial court properly authorized the use of duly deputized court reporters to assist the official court reporter.

■ Moreover, we are not prepared to hold that reversal is mandated where appellants have not been deprived of a statement of facts and where no showing has been made that it contains testimony not given at trial or that it omits testimony actually given at trial. *See* Rule 377(f). In the absence of some showing that the statement of facts is not a true and correct transcription of the testimony given no harm or prejudice is perceived.

Appellants' first point of error is overruled.

In the next three points of error, appellants contend (1) that the trial court erred in refusing to submit their special issues inquiring whether appellees failed to warn of the specific danger which caused Mrs. Jordan's specific injury, (2) that the trial court erred in denying a new trial because the evidence conclusively established that Mrs. Jordan was not warned of the specific danger that caused her injury and further that the jury's refusal to find a failure to timely and adequately warn is so against the great weight and overwhelming preponderance of the evidence as to be manifestly wrong and unjust, and (3) that the trial court erred in denying a new trial because there is no evidence or sufficient evidence to support the jury's answer to issues number 7 and 17.

Appellants' requested special issues on failure to warn were as follows:

*Requested Special Issue No. 1*

Do you find from a preponderance of the evidence that between October 31, 1972, and June 15, 1978, the Defendant, Ortho Pharmaceutical, failed to disclose to Cynthia Ann Jordan that benign hepatic cellular adenomas (liver tumors) have been associated with the use of Ortho-Novum?

Answer 'We do' or 'We do not.'

We the jury answer: _____

*Requested Special Issue No. 2*

Do you find from a preponderance of the evidence that Ortho Pharmaceutical's failure to disclose that benign hepatic cellular adenomas (liver tumors) have been associated with the use of Ortho-Novum was a false, misleading or deceptive act or practice?

Conduct may be 'FALSE, MISLEADING, OR DECEPTIVE' even though it involves statements or representations that are literally true, if, when taken as a whole in light of the circumstances existing at the time it occurred, the conduct had the capacity or tendency to mislead. 'False, misleading, or deceptive' also includes the failure to disclose information that could affect the decision to buy or that would cure a misunderstanding that could result either from the statements or representations made or from other conduct.

Answer 'We do' or 'We do not.'

We the jury answer: ⎯⎯⎯⎯⎯⎯⎯⎯

The trial court submitted twelve special issues to the jury as to whether or not Ortho provided timely and adequate warning to the medical profession and to Mrs. Jordan of the potential harm, if any, from the use of Ortho-Novum.

The issues submitted, less appropriate definitions, were as follows:

### QUESTION NO. 1

Do you find from a preponderance of the evidence that prior to June 14, 1978, Ortho Pharmaceutical failed to provide a timely and adequate warning to the medical profession of the potential harm, if any, of Ortho-Novum to prospective consumers?

\*        \*        \*        \*        \*        \*

### QUESTION NO. 2

Do you find from a preponderance of the evidence that prior to June 14, 1978, Ortho Pharmaceutical knew, or in the application of reasonably developed human skill and foresight, should have known, that it was not providing timely, adequate warnings to the medical profes-

sion about the potential harm, if any, of Ortho-Novum?

\*        \*        \*        \*        \*        \*

### QUESTION NO. 3

Do you find from a preponderance of the evidence that the failure of Ortho Pharmaceutical to provide timely and adequate warnings of the potential harm associated with the use of its product to the medical profession rendered Ortho-Novum unreasonably dangerous as marketed?

\*        \*        \*        \*        \*        \*

### QUESTION NO. 4

Do you find from a preponderance of the evidence that such failure to timely and adequately warn was a producing cause of the occurrence in question?

\*        \*        \*        \*        \*        \*

### QUESTION NO. 5

Do you find from a preponderance of the evidence that the failure to provide timely and adequate warnings of the potential danger, if any, associated with the use of Ortho-Novum to the medical profession was negligence?

\*        \*        \*        \*        \*        \*

### QUESTION NO. 6

Do you find from a preponderance of the evidence that such failure to timely and adequately warn was the proximate cause of the occurrence in question?

\*        \*        \*        \*        \*        \*

### QUESTION NO. 7

Do you find from a preponderance of the evidence that between July 12, 1970, and June 14, 1978, Ortho Pharmaceutical failed to provide a timely and adequate warning to Cynthia Ann Jordan of the potential harm, if any, associated with the use of Ortho-Novum?

\*        \*        \*        \*        \*        \*

### QUESTION NO. 8

Do you find from a preponderance of the evidence that between July 12, 1970, and June 14, 1978, Ortho Pharmaceutical knew, or, in the application of reasonably developed human skill and foresight,

should have known, that it was not providing timely, adequate warnings to Cynthia Ann Jordan about the potential harm, if any, of Ortho-Novum?

\* \* \* \* \* \*

*QUESTION NO. 9*

Do you find from a preponderance of the evidence that the failure of Ortho Pharmaceutical to provide timely and adequate warnings of the potential danger, if any, associated with the use of its product to Cynthia Ann Jordan rendered Ortho-Novum unreasonably dangerous as marketed?

\* \* \* \* \* \*

*QUESTION NO. 10*

Do you find from a preponderance of the evidence that such failure was a producing cause of the occurrence in question?

\* \* \* \* \* \*

*QUESTION NO. 11*

Do you find from a preponderance of the evidence that such failure to provide timely and adequate warnings of the potential danger, if any, associated with the use of Ortho-Novum to Cynthia Ann Jordan was negligence?

\* \* \* \* \* \*

*QUESTION NO. 12*

Do you find from a preponderance of the evidence that such negligence was a proximate cause of the occurrence in question?

\* \* \* \* \* \*

The trial court also submitted the following special issue relating to defendant Rolando A. Garza's conduct:

*QUESTION NO. 13*

Do you find from a preponderance of the evidence that Rolando A. Garza failed to deliver to Cynthia Ann Jordan the detailed patient labeling on May 1, 1978, when she purchased Ortho-Novum from Harmony Hills Pharmacy?

\* \* \* \* \* \*

The questions were submitted conditionally and after jury answers of "We do not" to questions one, seven, and thirteen the jury found zero damages.

The trial court thus submitted special issues as to warning in terms of both negligence and strict liability.

Appellants' argument revolves around the premise that a manufacturer of prescription drugs is under a duty to warn the patient directly of the risks and side effects of oral contraceptives when prescribed for contraceptive purposes. *See* 21 CFR § 310.501 (Jan. 31, 1978 and Feb. 24, 1978); Food, Drug and Cosmetic Act, as amended, 21 U.S.C. 301 *et seq. See also Lukaszewiez v. Ortho Pharmaceutical Corp.*, 510 F.Supp. 961 (E.D.Wisc.1981); *Stephens v. G.D. Searle & Co.*, 602 F.Supp. 379 (E.D. Mich.1985); *In re Certified Questions*, 419 Mich. 686, 358 N.W.2d 873 (1984) [dissenting opinion]; *MacDonald v. Ortho Pharmaceutical Corp.*, 394 Mass. 131, 475 N.E.2d 65 (1985).

It is not, however, argued that the jury was not charged by special issue submission on whether Ortho failed to provide timely and adequate warning to Mrs. Jordan of the potential harm associated with the use of Ortho-Novum.

Rather appellants complain of the trial court's failure to submit a special issue on the failure, if any, of Ortho to warn Mrs. Jordan specifically about the danger of developing liver tumors with using Ortho-Novum.

The trial court submitted special issue seven under the theory advocated by appellants and the jury rejected it. Therefore we need not concern ourselves with whether or not the "learned intermediary doctrine" remains viable in oral contraceptive cases.

Our concern must focus on whether or not the special issues as submitted fairly present the disputed issues for the jury's determination. *Baker Marine Corp. v. Moseley*, 645 S.W.2d 486 (Tex.App.—Corpus Christi 1982, writ ref'd n.r.e.); Rule 279.

■ It is the trial court's duty to submit controlling issues which are raised by the

pleadings and the evidence. However, in doing so, the trial court is given discretion and is not bound by the exact language of the pleadings. *Braugh v. Phillips,* 557 S.W.2d 155 (Tex.Civ.App.—Corpus Christi 1977, writ ref'd n.r.e.).

■ Rule 277 and 279 give the trial court discretion whether to submit issues as to each element of a cause or to submit the issues broadly even though the submission may constitute a global submission. *Line Enterprises v. Hooks & Matteson,* 659 S.W.2d 113 (Tex.App.—Amarillo 1983, no writ).

■ The issue as submitted by the trial court embodied any and all potential harm associated with Ortho-Novum. Appellants' requested issue embraced only one risk or potential harm.

The court's submitted issue embodies the controlling issues in the case and necessarily includes the narrower issue requested to be submitted by appellants. There can be no abuse of discretion by the trial court in the manner the controlling issues were submitted. Rule 277; Pope and Lowene, *The State of the Special Verdict—1979,* 11 ST. MARY'S L.J. 1, 9 (1979); *Rodriguez v. Estes,* 635 S.W.2d 918 (Tex.App.—Amarillo 1982, no writ).

The trial court did not err in refusing to submit appellants' specially requested issues.

Appellants contend that the trial court erred in denying a new trial because the evidence, allegedly, conclusively established that Mrs. Jordan, was not warned of the specific danger that caused her injury.

■ The burden to establish a failure to warn was upon appellants. *Martinez v. Dixie Carriers,* 529 F.2d 457 (5th Cir.1976); *Thomas v. St. Joseph Hospital,* 618 S.W.2d 791 (Tex.Civ.App.—Houston [1st Dist.] 1981, no writ).

■ Thus an adverse answer by the factfinder, or its failure to find the existence of a vital fact issue reflects a failure by appellants to carry out their burden of proof. Moreover, when the jury finds the non-existence of a vital fact or gives a negative answer to an issue inquiring as to the existence of a vital fact, its finding or answer need not be supported by evidence and error can occur only if the fact has been conclusively established or established as a matter of law. *Pouncy v. Garner,* 626 S.W.2d 337 (Tex.App.—Tyler 1981, writ ref'd n.r.e.).

■ In reviewing "matter of law" points, the court will consider all of the evidence, and if the converse of the finding is established conclusively, the point will be sustained. Calvert, *"No Evidence" and "Insufficient Evidence" Points of Error,* 38 TEXAS L.REV. 361 (1960).

■ The record before us is quite lengthy and reflects a hotly contested trial. A review of the testimony bearing upon the issue of failure to warn Mrs. Jordan discloses much conflicting evidence on the issue. The best that can be said about the evidence on the matter is that the issue was highly disputed.

Mrs. Jordan testified that she had engaged in a careful discussion with her physician concerning the safe use of Ortho-Novum and that after commencing the use of oral contraceptives maintained a vigilant watch for body reactions and side effects from the drugs.

She denied ever learning about the possibility of liver tumors from the use of oral contraceptives. She further denied receiving a detailed patient labeling provided by Ortho through pharmacist/defendant Rolando Garza.

Linda Kolman, an employee of the Harmony Hills Pharmacy testified along with Garza that the detailed patient labeling was received from each manufacturer whose birth control pills the pharmacy handled and that it was routinely dispensed by Garza along with the filled prescription.[2] Both

---

**2.** The first requirement of any warning directly to the ultimate users came in regulations from the Commissioner of the Food and Drug Administration printed in *The Federal Register* for June 11, 1970.

contradicted Mrs. Jordan's testimony denying the receipt of the labeling.

It was further demonstrated through Mrs. Jordan's deposition that she had become familiar with a booklet entitled "After Your Doctor Prescribes Ortho-Novum" printed by Ortho, having read it at her doctor's office.[3] The booklet, admitted into evidence as defendants' exhibit 2, contains the warning, "Tumors of the liver, sometimes fatal, have been reported in women taking the pill. This has been reported in both short-term as well as long-term users."

Plaintiffs' exhibit 2–A, a detailed patient labeling distributed by Ortho in response to a 1978 Food & Drug Administration regulation charge, contained the following warning:

> Oral contraceptives do cause, although rarely, a benign (non malignant) tumor of the liver. These tumors do not spread, but they may rupture and cause internal bleeding, which may be fatal. A few cases of cancer of the liver have been reported in women using oral contraceptives, but it is not yet known whether the drug caused them.

These patient labelings were provided by Ortho to wholesalers and retailers, including pharmacists, in response to the FDA regulation. The pharmacist was then required to provide a copy with each prescription filled if the merchandise in stock did not already contain the updated labeling.

From the conflicting testimony the jury was clearly entitled to conclude that Mrs. Jordan had received the warning through the patient labeling. It was likewise entitled to disbelieve that Mrs. Jordan had not received the warning. Fact issues were raised and resolved against appellants. While there may be some evidence supporting appellants' position and while we might be inclined to find in favor of appellants, we are not at liberty to disturb a jury verdict reached on the basis of credibility of the witnesses and weight given to their testimony. *State & County Mutual Fire Insurance Co. v. Kinner,* 314 S.W.2d 871 (Tex.Civ.App.—Waco), *aff'd,* 159 Tex. 290, 319 S.W.2d 297 (1958). We overrule appellants' contention that they conclusively established Ortho's failure to warn.

■ Appellants' additional contention that the jury's refusal to find a failure to timely and adequately warning is against the great weight and overwhelming preponderance of the evidence presents a factual sufficiency challenge.

The burden was upon appellants' to obtain an affirmative finding. Having failed to do so a proper review of the evidence requires this court to once again review the entire record. *In re King's Estate,* 150 Tex. 662, 244 S.W.2d 660 (1951).

We are not unaware of the problem courts often encounter when required to assay the sufficiency of evidence in an "against the great weight" challenge. As in most cases the decision in this case focuses basically upon such intangible factors as credibility of witnesses and the weight to be given their testimony.

---

The regulations provided for patient labeling and for a booklet to be made available by the manufacturers of oral contraceptives. The booklet was prepared by a committee composed of members of the American College of Obstetricians and Gynecologists, the American Medical Association and the Pharmaceutical Manufacturers Association and was approved by the Food and Drug Administration.

Plaintiffs' exhibit 1, the Ortho-Novum packaging (Dial pak) contains a reference to the preparation of the booklet. The dial pak further contains the following warning:

> Safe use of this drug requires a careful discussion with your doctor. To assist him in providing you with the necessary information, a booklet has been prepared that is written in a style understandable to you as the drug user. This provides information on the effectiveness and known hazards of the drug, including warnings, side effects and who should not use it. Your doctor will give you this booklet if you ask for it, and he can answer any questions you may have about the use of this drug.

＊　　＊　　＊　　＊　　＊　　＊

3. The booklet required by the Food and Drug Administration is titled "What You Should Know About the Pill." Ortho's own booklet incorporated as its first section the booklet required by the FDA.

In the absence of some evidence that the jury finding was actuated by passion, prejudice or other improper motive, we feel compelled to leave the jury finding undisturbed. A review of the entire record reveals no such ill motive. Appellants' factual sufficiency challenge is overruled.

Appellants next allege that there is no evidence or that the evidence is at best insufficient to support the jury's answers to Special Issues Numbers 7 and 17. These contentions are overruled.

Special Issue Number 7, as pointed out previously, inquired as to whether Ortho failed to warn appellant Cynthia Ann Jordan. Special Issue Number 17 inquired as to past medical expenses suffered by appellant. The jury answered zero as to the damages issue.

The burden of proof on both issues was upon appellants. The jury's negative answer to an issue upon which the complaining party had the burden of proof need not be supported by affirmative evidence. Therefore the fact-finder's failure to answer in favor of the complaining party can be error only when the fact has been established conclusively or as a matter of law.

Moreover, we have already rejected appellants' "as a matter of law" challenge to the jury finding on Special Issue Number 7 under standards of review requiring a review of the entire record. We find no compelling reason to arrive at a different result in addressing appellants' factual sufficiency challenge.

The damage issues were all answered with a finding of zero. Inasmuch as the liability issues were all resolved against appellants the damage issues became immaterial. *Southern Pine Lumber Co. v. Andrade*, 132 Tex. 372, 124 S.W.2d 334 (1939); *Garza v. San Antonio Transit Co.*, 180 S.W.2d 1006 (Tex.Civ.App.—San Antonio 1944, writ ref'd n.r.e.).

Appellants' point of error number 5 alleges that jury misconduct occurred when the personal experiences of the jurors were discussed during deliberation without a cautionary warning from the foreman.

Following the denial of a hearing on alleged jury misconduct the trial court refused to grant a new trial. The refusal to grant a new trial forms the basis of appellants' instant contention.

Appellants attached the affidavits of two of the jurors to their motion for new trial. These two jurors comprised the sole dissenters in the 10–2 verdict. Also attached to the motion was an affidavit executed by counsel for appellants. This affidavit merely recited that the other jurors contacted were noncommittal without reciting which other jurors had been contacted and what efforts had been made to obtain affidavits.

Only the juror Mary Catherine Browning recited factual statements in her affidavit while the other juror merely adopted Browning's recitations.

The trial court, after examination of the motion with affidavits attached, ruled that the motion and affidavits did not show commission of an overt act of jury misconduct and refused appellants a hearing on their motion.

An examination of the only affidavit with factual recitations, that of the juror Browning, discloses that the majority of the recitations contained therein deal with the mental processes of the jurors.

Where the affidavit merely goes to the reasoning processes by which the jury arrived at its verdict, the trial court may properly refuse to receive evidence. *Zamora v. Zamora*, 260 S.W.2d 604 (Tex.Civ. App.—San Antonio 1953, writ ref'd); *see also Cortez v. Medical Protective Co. of Ft. Wayne, Ind.*, 560 S.W.2d 132 (Tex.Civ. App.—Corpus Christi 1977, writ ref'd n.r. e.).

Appellants do not complain of the refusal of the court to grant them a hearing on their motion. Inasmuch as the court permitted the perfecting of a bill of exception, appellants apparently place their reliance for reversal on the court's failure to grant

the new trial following the presentment of evidence by way of the bill.

The Texas Supreme Court in *Roy Jones Lumber Co. v. Murphy,* 139 Tex. 478, 163 S.W.2d 644 (1942) laid down rules detailing when a trial court is required to hear the testimony of jurors at a hearing on a motion for new trial based upon jury misconduct.

The Court there held:

The only remedy against 'fishing expeditions' where misconduct is charged, is to require that, by affidavits, the movant shall prove his good faith, and, by particularizing, demonstrate that his allegations of misconduct are based upon knowledge and not suspicion or hope. Therefore, we hold the correct rule is:

(1) [I]f affidavits are attached to the motion showing material jury misconduct it is reversible error for the trial court to refuse to hear testimony on the motion,

\* \* \* \* \* \*

(2) or, if the motion discloses a reasonable explanation and excuse as to why affidavits cannot be secured and exhibited, in connection with sufficient allegations of material jury misconduct, it is likewise reversible error to decline to hear testimony on the motion,

\* \* \* \* \* \*

but

(3) in the absence of such affidavits or a reasonable excuse for not exhibiting the same, a refusal to hear testimony from the jurors on the motion, is a matter within the sound discretion of the trial judge. (citations omitted)

163 S.W.2d at 646.

We examine first the propriety of the court in refusing to grant a hearing following its examination of the motion and accompanying affidavits because if the court was justified in refusing to conduct a hearing in light of the pleadings before it, it benefits appellants little that it refused to grant a new trial following the perfecting of a bill of exceptions.

■■■ An examination of the motion and affidavits, if present, must reveal sufficient allegations of material jury misconduct setting forth specific facts concerning the act of misconduct relied upon, naming or identifying the juror or jurors who committed the misconduct, and showing that as a consequence, harm has resulted to the movant. *Moran Utilities Co. v. McHaney,* 325 S.W.2d 712, 722 (Tex.Civ.App.—Beaumont 1959, writ ref'd n.r.e.).

■■■ If the movant cannot state the facts specifically, he should plead the facts which show his inability to do so. The facts so pleaded must show that the charges are grounded on knowledge rather than suspicion. *Union City Transfer v. Adams,* 248 S.W.2d 256 (Tex.Civ.App.—Fort Worth 1952, writ ref'd n.r.e.), *cert. denied,* 344 U.S. 912, 73 S.Ct. 334, 97 L.Ed. 703 (1953).

■■■ It must be apparent from the motion and affidavits that the allegation of facts charging jury misconduct can be substantiated through admissible evidence at the hearing on the motion for new trial. *Lanphier Construction Co. v. Fowco Construction Co.,* 523 S.W.2d 29 (Tex.Civ.App.—Corpus Christi 1975, writ ref'd n.r.e.).

Proof of jury misconduct can only be proven through evidence of overt acts of misconduct. *Fountain v. Ferguson,* 441 S.W.2d 506 (Tex.1969).

And while conversation may constitute an overt act, not all conversation during jury deliberation may be inquired into. *Trousdale v. Texas & New Orleans Railroad Co.,* 154 Tex. 231, 276 S.W.2d 242 (1955).

For example, a juror may not be examined into the mental process by which he reaches a verdict. *Lanphier Construction Co. v. Fowco Construction Co., supra.*

The affidavit of Browning contains the allegation that an identified juror stated prior to beginning deliberations that "everyone must be responsible for their own lives, people shouldn't go around suing other people, they must be responsible for

what happens to them." There is no allegation that any other juror acknowledged hearing the statement or that it was ever discussed further amongst the jury members as a whole or between the various members thereof. *Cf. Gulf Coast Sailboats, Inc. v. McGuire*, 616 S.W.2d 385 (Tex.Civ.App.—Houston [14th Dist.] 1981, writ ref'd n.r.e.).

Other allegations directed at the jury's refusal to consider various aspects of the case. because a majority of the jury members had pre-agreed who should win involved the mental processes of the juror's, to wit: "It seemed that the majority had decided who should win . . ."

Still another allegation credited unidentified members of the jury with the remark ". . . that if a person must be responsible for their own actions then no one should have to pay for what has happened to them, . . ."

Yet another allegation, without identifying the jurors, condemned eight jurors for not wanting to consider the evidence.

It is apparent that the allegations contained in the motion and affidavits were general in nature and focused upon the. mental processes of the jury rather than upon particularized material jury misconduct.

Only the statement attributed to the juror in Browning's affidavit evidences some overt act by an identifiable person. But even this allegation fails to demonstrate that as a consequence of the alleged statement harm resulted to the movant.[4] *Cf. Compton v. Henrie*, 364 S.W.2d 179 (Tex. 1963). Under the circumstances the trial court was not required to conduct a hearing. *Roy Jones Lumber Co. v. Murphy, supra; Cortez v. Medical Protective Co. of Ft. Wayne, Ind., supra.*

But even if we consider the testimony adduced upon the bill of exceptions, the trial court would not have been required to grant a new trial in the absence of a showing of probable harm.

The burden was upon appellants to establish probable harm. *Shop Rite Foods, Inc. v. Upjohn Co.*, 619 S.W.2d 574 (Tex. Civ.App.—Amarillo 1981, writ ref'd n.r.e.).

■ The granting of a new trial on the basis of jury misconduct lies within the sound discretion of the trial court and its decision will not be reversed except upon a clear showing of abuse of discretion. *Hughett v. Dwyre*, 624 S.W.2d 401 (Tex. App.—Amarillo 1981, writ ref'd n.r.e.).

■ We hold that appellants have not demonstrated an abuse of discretion by the trial court in refusing to hear testimony nor in refusing to grant a new trial. Appellants' point of error number 5 is overruled.

Appellants' sixth point of error complains of alleged trial court error in the exclusion of certain deposition testimony.

Appellants sought to offer the deposition testimony of Barbara Seaman as expert testimony on what a fair, reasonable and adequate warning would be to consumers of oral contraceptives.

Seaman possessed a BA degree in History and a science-writing certificate from the Columbia School of Journalism. She had authored numerous articles in the field of birth control and oral contraceptives and had served on various task forces focusing on the area of birth control.

An attempt to read her deposition to the jury was met by timely objection by appellees.

The trial court then undertook to read the entire Seaman deposition and upon completion ruled that her testimony would not be admissible. Appellants were then permitted to preserve their objection to the court's ruling by way of a bill of exception. *See* Rule 372.

---

4. The bill of exception affirmatively reveals that no harm was suffered by appellants as a result of the statement made.

*By Counsel for Movant:*

Q: The statements, did you see anybody change their vote after [the juror] made those statements.

A: No. I can't say that I did see anyone change their vote.

Counsel for appellants then undertook to designate those pages and lines of Seaman's deposition testimony thought to be relevant for preservation of his objection. The testimony contained in the designated portions was, however, not read into the record and does not appear in the record before us by way of a bill of exception or otherwise. Rule 372 in pertinent part provides:

If either party during the progress of a cause is dissatisfied with any ruling, opinion, or other action of the court, he may except thereto at the time the said ruling is made, or announced or such action taken, and at his request time shall be given to embody such exception in a written bill.

\* \* \* \* \* \*

A bill of exception must, in the case of excluded testimony, be developed if one intends to rely upon the exclusion as a basis for reversible error. *McInnes v. Yamaha Motor Corp, U.S.A.*, 673 S.W.2d 185 (Tex.1984), *cert. denied*, —— U.S. ——, 105 S.Ct. 782, 83 L.Ed.2d 777 (1985); *Duncan v. Cessna Aircraft Co.*, 665 S.W.2d 414 (Tex.1984); *Gulf Paving Co. v. Lofstedt*, 144 Tex. 17, 188 S.W.2d 155 (1945).

■ If the excluded testimony does not appear in a formal bill of exception or in the statement of facts the assignment of error has not been properly preserved because this court has no way of reviewing the trial court's action in excluding it. *Biddle v. National Old Line Insurance Co.*, 513 S.W.2d 135 (Tex.Civ.App.—Dallas 1974, writ ref'd n.r.e.).

■ In the absence of the excluded testimony in the bill of exception, appellants have waived any complaint on excluded testimony. Point of error six is overruled.

■ Appellants next contend that the trial court erred in conducting a hearing on a contest of their pauper's oath without allowing them adequate notice. Appellants also complain of the increased bond ordered by the court.

Their complaint does not deny that notice was received but instead appellants argue that they did not receive sufficient time to allow them to attend the hearing. It is claimed that had they appeared a showing of indigency would have been made because they were on welfare at the time.

The record reflects that counsel for appellants received notice of the hearing on the contest on Friday, March 18, 1983, and that the hearing date was for March 22, 1983.

The hearing was thus held and a ruling obtained within the time framework contemplated by Rule 355.

We note that the appeal before us is by way of a properly filed appeal bond and therefore, appellants have not been deprived of their right to appeal. We perceive no harm to them from the court's ruling sustaining the contest to their pauper's oath. Point of error seven is overruled.

The contest to appellants' affidavit of inability to pay costs on appeal was filed on March 18, 1983. A hearing was held on March 22, 1983. The written order sustaining the contest was not entered until April 11, 1983. However, appellants filed their appeal bond on March 31, 1983. Thereafter, the matter of indigency on appeal went out of the case.

■ In their final point of error, appellants contend that the trial court erred in placing a hold on the transcript until an increased bond was filed because appellees failed to comply with Rule 355(e) in obtaining a written order within ten (10) days.

We have searched the record for any evidence supporting appellants' contention of the court's coerciveness and have found none. There has, however, been included as an appendix to appellants' brief an affidavit of counsel for appellants wherein she makes the same assertion now raised on appeal. The document was not offered in evidence during trial nor included in any bill of exception. It is therefore, not properly before this court and will not be considered for any purpose. *Zodiac Corp. v. General Electric Credit Corp.*, 566 S.W.2d

341 (Tex.Civ.App.—Tyler 1978, no writ); *Davis v. Huey*, 571 S.W.2d 859 (Tex.1978), *appeal after remand*, 608 S.W.2d 944 (Tex. Civ.App.1980), *rev'd on other grounds*, 620 S.W.2d 561 (1981).

■ Inasmuch as the transcript was timely filed and is before us we can perceive no harm to appellants' even if the allegations made the basis of assigned error are taken as true. Once the transcript was timely filed the action of the trial court, even if true, could not constitute the basis for reversible error. Appellants' point of error number eight is overruled.

The judgment of the trial court is affirmed.